Number 15-1220 Utica Mutual Insurance Company v. Herbert H. Landy Insurance Company Thank you. Good morning. May it please the Court, Erin Higgins for the appellant Utica Mutual Insurance Company and may I reserve one minute for rebuttal? Yes. I'd like to begin by explaining why Utica is taking up this Court's time when the amount of money at stake, as the record shows, is relatively small. Utica is pursuing this appeal because Utica issues professional liability policies all across the country. And the lower court's decision here is the only decision anywhere in the country where a court has held that professional liability policy. Utica strongly believes that the lower court's decision should be reversed for two reasons. First, there is simply no claim for professional services here. Where Cress' complaint, the underlying plaintiff, alleged that Landy breached a professional obligation to Cress, the underlying plaintiff, to General Starr, a surplus lines insurer, or to anyone. Second, both of Cress' claims in the underlying complaint were premised on unfair competition and Utica's policy plainly requirement of Utica's insuring agreement. The only issue on appeal is whether Utica had a duty to defend. And as this court is well aware, that analysis requires the court to compare the allegations of the underlying complaint to the provisions of Utica's policy. Now Landy, in its brief, attempts to characterize the Cress complaint, the underlying complaint, as alleging that Landy breached its obligations under a producer agreement with General Starr, a surplus lines insurer. And Landy must think that point is very important because by my count, Landy says 12 different times in its brief that Cress alleged that Landy was negligent in agreement with General Starr, nor does Cress allege that Landy breached any duties under that agreement. Cress does not allege anywhere in its complaint that Landy breached its professional obligations to Cress, to General Starr, or to anyone. What Cress alleges is that Landy engaged in a method of doing business that constituted unfair competition. This court and every other court that has considered similar complaints that are based on an insured's method of doing business instead of on an insured's breach of a policy. Counsel, are you, when one thinks of an errors and omissions policy which addresses professional services rendered by an insured to, I guess this is a question, a client of the insured, I mean, are you saying that there has to be some kind of a relationship between the insured and a client? And the argument is that the insured rendered those services in an unprofessional manner into a claim against the insured? Does there have to be that kind of relationship? Which clearly is not present here, and I guess that's in part your argument. Does your argument go that far? Our argument is that there has to be an allegation that there was a specific breach of a professional duty. To whom? To someone. And that is not in this complaint. And the reason it's not in this complaint is that this is an unfair competition claim, and one company does not owe duties to a competitor. So what we're saying is that there has to be an allegation of a professional duty. So I think perhaps what your Honor is getting to is I think the point that was made at the lower point where the argument seemed to focus on this claim has to be made by a client. What has to be in the complaint is a breach of a professional duty. A competitor cannot make that claim. So if the question is could a competitor ever have a professional services claim, my answer would be no. But we are not saying that only a client of the, in this case, insurance agency could potentially stand a claim for professional services under a policy. Tort duties do not require an explicit form of relationship between two parties. We have tort duties to individuals with whom we're not in relationship. I gather the notion here is that Landy, the insurer, did have a kind of tort duty to not injure Cress by acting in the unprofessional manner that it did. Isn't that what's being argued here and furthermore alleged in the complaint? What's alleged in the complaint, your Honor, is that Landy was involved in a method of doing business that constituted unfair competition. And what the count of the complaint that appears in the brief under California law where there's a claim between two competitors, the only, an essential element to that claim is unfair competition. Without unfair competition, that claim cannot be pursued. So if General Starr had alleged that the company here negligently failed to apprise itself of whether there was an inadequate market among the admitted companies, we might have a very different case. That's correct, your Honor. If the regulator made the same claim, we might have a very different case. If a regulator made that claim, your Honor, I agree, that would be a different case. I think what's important... If somebody who got sold the insurance realized that they paid too much, we might have a very different case. So it's just the fact that it is a competitor that distinguishes this from those three circumstances? That distinguishes it. It distinguishes it from the cases we talk about in our brief. And if I could go on, your Honor, it distinguishes it for two reasons. One is that a competitor does not have a claim for breach of a professional duty. But second, the damages that would be alleged in any of the hypothetical scenarios that your Honor just mentioned also would be damages that flow from a breach of professional duty. So the example your Honor gave of an insured of Landy's out in California makes a claim against Landy because Landy got them a surplus lines policy instead of going through the procedures and getting them an admitted policy. And so maybe the insurer goes insolvent and there is no remedy from the insurer's insolvency fund in California. So what that customer would be alleging is a breach of a specific professional duty and damages in the form of the difference in value between the policy they did get and the policy they should have gotten. That is a classic professional services claim. What we have here instead is Cress not alleging a breach of any duty, alleging unfair competition, and the damages that Cress alleges are lost profits. They are alleging damages from unfair competition. That is not a intended to be insured under this type of a policy. Thank you. Your Honors, my name is John Grunert. I represent Landy Insurance. The problem with the argument you just heard is that the policy does not refer to claims for breach of professional duties. The policy refers to claims arising from acts or omissions that occurred during the performance of professional services. Landy was performing professional services. The Cress complaint specifically refers to activities that were indisputably services that required the specialized expertise of an insurance professional. So they met the has been provided by Massachusetts law and really by the law of almost every other state, if not every other state. So the claim is not did you breach, are you being sued for breaching a duty to the claimant. The policy provides coverage if it was professional services and if you did something wrong in If Utica wanted to write its policy differently, it could have done that. But it has to live with the policy it wrote. Now, I also have cited in my brief the case of Harrod v. Aetna Casualty Insurity, which was a case from the Third Circuit and it's the leading case that said that a lawyer who was sued by a exclusion, but that that claim clearly and unequivocally arose out of professional services. There's a case from Illinois, the Pekin Insurance case, which applied the same principle in the case involving an insurance company. And if your clerks go to the books, they will find that there are many other cases to similar effect that make clear that professional services don't need to be services performed for the client. Again, what exactly were the professional services that Landy was engaged in and on whose behalf? Landy was engaged in the services on behalf of its client, General Starr. And Cress alleged, for example, that Landy did not properly investigate the availability of insurance coverage from admitted insurers as to certain companies that it placed business with General Starr for. It alleged that Landy was negligent in understanding the regulatory filings that was required to make. It alleged generally that it was negligent simply in placing and soliciting the insurance. And the record was replete with undisputed evidence about what placing and soliciting insurance entails. Aren't they saying that in light of Landy conducting its business in that way, it resulted in unfair competition for Cress? Isn't that what they're saying? With all of those allegations? What they said was Landy was negligent in the investigations it did. It was negligent in the conduct it took to place insurance. As a result of that essentially by way of collateral damage, we, Cress, lost business that we otherwise would have gotten. Now, sure, in their statute of Aren't you just relabeling in count two exactly what you alleged in count one? It sounds like the underlying conduct is exactly the same. Again, you've just given a different label in count two. That then gets into the fact that we are applying Massachusetts law here, which does seem to say you take the case as it's been characterized by the recharacterization of something for which there is no coverage or there is coverage. And so my concern is less about unfair competition than the fact that it is actually the underlying plaintiff's lawyer who governs with the pleadings he makes. As long as he's referred to them as negligence and the law isn't clear that he can't, defense costs are awarded. Well, you know, if the underlying claim is meritless, that certainly, you know, bears on the defense of the underlying claim. But Landy has to deal with the claims that are made against it. And I think it's important to bear in mind that although my sister keeps referring to this over and over as just an unfair competition claim, the statutory unfair competition claim provided for no damages. The only damages claim against Landy, the only one that could result in a big money judgment against Landy, was a claim that you, Landy, were negligent in the way you performed obligations for your client. And as collateral effects of that negligence, you caused us, Crest, to lose business. There is nothing implausible about that type of claim. There are certainly in the area of torts, there are lots of areas where conduct directed towards somebody else collaterally damages a different person and that different person has a claim. Well, it might be that no duty is owed to the competitor and the case might get dismissed on that basis, but that's a different question. That's correct. It would be up to the attorney hired and paid by Utica to get it dismissed. I mean, you know, we're talking about E&O policies and I think of it in legal malpractice policies because that's what we all know about. Every lawyer knows that, you know, if you draft the document or make a government filing, a subdivision plan or a prospectus or a trust document that, sure, if you're negligent in doing it, probably the person most likely to sue you is your client, but those people may sue you, too, if they are damaged by something you did wrong in preparing that document. It's interesting that you suggest that Massachusetts law on this defense obligation allows an exception for an implausible claim. I'm surprised you're that then gets a court in our position into weighing how good the plaintiff's assertion is rather than that being done in the court where the claim is being made. I think the Massachusetts coverage law is just very clear that when the coverage decision is made, the court making that decision or the insurer doesn't evaluate whether the claim that falls within the coverage is a strong claim. I agree with you. It's just you were sort of suggesting the opposite. Well, if I did that, then I was misstating what I meant. The fact that Press's claims against Landy may have been meritless, and in fact, Landy certainly thinks they are meritless or were meritless, that doesn't matter. Utica's obligation was to defend Landy and get rid of the meritless claims. I only have 39 seconds or 38 seconds left. On the unfair competition exclusion, there are many types of unfair competition that fall within the Lanham Act claim, namely conduct tending to mislead consumers. I listed some of them in my brief, but there are statutory claims, Lanham Act claims, for example. There are trade dress claims. There are trade name claims. The natural reading of unfair competition of any type is that it means all of those different types, any other type of claim that involves likelihood of consumer confusion as to the source, origin, endorsement, affiliation of goods, and that is well-established law. Thank you very much, Your Honors. Just a few points, Your Honors. We're not arguing here that the coverage decision should be made based on whether the claim has merit or it doesn't. What we said in our brief was that the particular claim that Press alleged, this idea of negligent interference with contractual relations between competitors, can only be proven through unfair competition. It's an unfair competition claim. And the fact that the plaintiff in that case sprinkled negligence throughout the complaint means nothing other than they were attempting to allege that they were negligently unfairly competing. And just one minute on the unfair competition exclusion, that exclusion plainly reads unfair competition of any type. If we look at the complaint in this case, both counts were premised on Landy's alleged violation of the California unfair competition statute. What Landy wants is that exclusion to say that it excludes unfair competition claims of a certain type, but that is not what it says. Thank you.